This case is in the docket 2-14-0701, Brandenburg Industrial Service Company, Plaintiff Appellate. The Illinois Department of Veterans Finance Director, Lorraine Hamer, and Dan Rutherford, is the official capacity treasurer of the state of Illinois, Defendant's Appellants. I'm going to go on behalf of the Defendant's Appellants, Attorney Mr. Carl J. Elis. I'm going to go on behalf of the Plaintiff Appellate, Attorney Mr. Mark Bernstein. Good morning, gentlemen. Mr. Elis, are you prepared to speak? Good morning, Your Honors. Good morning, Counsel. May it please the Court. Your Honors, I'm Illinois Assistant Attorney General Carl Elis, appearing from the Department of Revenue. As you know, this is a use tax case, an exemption case actually, where the taxpayer claims that certain property was used primarily in a manufacturing capacity, and so by that reason is entitled to an exemption. The department had an audit. The auditor eventually was able to produce an amended return. As I believe Your Honors probably know, an amended return is the department's prima facie case. It's actually evidence. It establishes what it says, which is that their tax returns should be changed and that the use tax exemption was improper. After that, the department was sued and taxpayers have argued that the amended return is wrong. They offered the circuit court as evidence affidavits of one of the company's principals, Mr. Jasinowski, who testified that it was his knowledge that the company always used the equipment in the same sort of way. Did the department submit affidavits? The department submitted the auditor's report, which was the basis for the amended return that I mentioned. That was a woman named Kasie. But no counter affidavit? Nothing to rebut directly. Rebutting him. The testimony of Mr. Jasinowski. It's your position that the evidence that was presented did not rebut the presumption? That is our position. In fact, because this is a use tax exemption case, there's a special type of evidence that's required to establish that exemption. And the taxpayer in this case, although they had volumes of material, didn't do that. In fact, they fell well short of that. But they did do that in the Cook County case, correct? Or at least they introduced more records, photographs, videos. Yes, in a different tax year, different equipment. They had a trial in Cook County. Different equipment, but the same type of equipment, right? The process had not changed. I don't have any reason to believe that the process was different. So even though it was purchased in a different tax year, the process was essentially the same? Yes. I should say that, as we say in our briefs, the prior cases and different tax years and different equipment do not act as collateral estoppel against the Department of Revenue. But more importantly, I think also it's important to keep in mind that Judge Sherlock in that case held a trial. We had testimony witnesses. He weighed the evidence. In this case, Judge Wheaton said she found that persuasive. And this was a summary judgment case. And as I want to make as a secondary point, summary judgment in this case was improper for that reason, too, because Judge Wheaton here was weighing evidence. It was very obvious that she didn't think our amended return should get preference over their affidavit testimony. But that's weighing evidence. Well, didn't she also look at it that you didn't file any responding affidavits? And what she had in front of her is affidavits on one side, nothing on the other. No, Your Honor. Maybe she did, but I think that's legal error. Our amended return is evidence. It just is. It's enough to prove our case. It's a prima facie proof of our case. What's the standard of review on the taxpayer's burden to rebut your prima facie case? My understanding is that it's a de novo review because it's a summary judgment case, Your Honor. It's just whether it's – You're saying this all is in the framework of a summary judgment rather than there's an independent standard of review to determine whether or not the taxpayer has produced sufficient documentary support. Is that your position? No. If the taxpayer produces sufficient documentary support to rebut, it becomes a question of fact and there needs to be a trial. Someone has to weigh their evidence against our evidence. In Goldfarb v. Department of Revenue, the court said that where the taxpayer's proof cannot be said to be so inconsistent or improbable in itself as to be unworthy of belief, the prima facie case is overcome. And your position is here, the evidence they presented just wasn't worthy of belief in and of itself because it lacked documentation that's required. Yes, and that's our primary argument and that's the argument I hope the court reaches. Because this other argument about whether it should or shouldn't be summary judgment I think is a side issue. If the case were remanded to judge, we would end up being led back here after she weighs the evidence. Similar to an expert witness who testifies to, for example, an accountant who testifies and presents a summary. Without the underlying records, a summary is worthless, correct? The records that the opinion is based upon have to be before the court. I'm not sure that is correct, Your Honor. My understanding is that the amended return is magical and that it actually is the department's case. And if we decide to stand on it. Talking about their case, can we rebut the department's case? If they rebut it, then I think someone has to weigh their evidence against our evidence. But I think that's a side point given the fact that Judge Wheaton makes it clear that she finds their evidence credible and ours not. And I think Judge Wheaton is wrong in that analysis because this is a mixed-use case. Unlike many of the other cases where taxpayers have prevailed against the department, they've been able to show that the disputed piece of equipment was used exclusively for some exempt purpose, like the chase trucks in the pollution case, for example. Once a taxpayer is able to show that the item in dispute is used exclusively for an exempt purpose, then the department has to lose because the only reason the taxpayer would have the equipment is for the exempt purpose. Here we have mixed-use equipment. There were cutters in this case, but the department's auditor said the cutters aren't a mixed-use equipment. If they're using cutters, then they're using them for manufacturing. She took the cutters out of the mix and she gave the taxpayer an exemption for the cutters. But all this other equipment, the bucket loaders and generators and that sort of thing, is useful for not only manufacturing but also for demolition. So then what type of requirement, what type of proof is the department expecting? I mean, isn't it burdensome to ask a manufacturer or an individual who has mixed-use equipment to stop and write down how many minutes was used, how much of that one particular equipment is used for one specific thing? I mean, do you believe or is it reasonable that your opponent argues it's burdensome, the burden that the department is putting on these individuals? Establishing exemptions may be burdensome. It's our position that the taxpayer, if they want the exemption, has to do whatever is required to establish the exemption. I don't know that it's that burdensome in this particular case, and let me explain why. Their manufacturing process is in seven steps. The first couple steps are not manufacturing. The last couple steps are not manufacturing. They're knocking down buildings. They're pulling out the metal. They're putting the job site back to a pristine condition. All they have to do is record when they're using the equipment on the site. If they're using it before the metal is stripped away, then we know it's not used. If it's being used on the site, I'm sure much of this equipment was being used on the site after their removal of the metal because they're putting the building that's been removed and the land that it sat on back to its original best conditions. So we know that the manufacturing part of their process happens in the middle. They need to show us that this equipment was being used in that middle process. But you're requiring them to show you that that equipment is used during the manufacturing process more than 50% of the time. That's true as well, and that's just because of the way the exemption is written, Your Honor. It has to be primary use. So, yeah, that's another burden that they have to meet as well. Doesn't the process you just explained, doesn't it go without saying that at least 50% of the time or more, like you said, they're going to knock it down, they're going to put it back up, but in the middle, that's where the real work comes in. That's where the rubber meets the road. So couldn't you technically say reasonably you can infer that they're using it more than 50% of the time? I have a problem or the Department of the Law has a problem with that inference because what's necessary in this case are what the tax law calls books and records, which is a term of art. They have to show the department, not with documents that they generated after an audit was started, but with documents that they kept during the course of their business that can show that they are entitled to this exemption. They can structure their documents any way they want, but they have to do it before the audit. They can't come in and do it afterwards. So does the department give taxpayers, manufacturers some guidance on how they should structure their returns or their records prior to an audit, prior to being anticipated being audited? There's years of tax law on books and records and what's necessary. There's much of it, and I think that the taxpayers are correct here in saying that almost all of that is in the retailer's occupation tax context. But in this case, and that's another point I need to make, in this case, we have the same requirements that a retailer would have to keep books and records, to establish that each piece of equipment needs the exemption because we have a regulation, 150.1320, that says in the use tax context, the same books and records requirements are applicable as would be in the road tax. There's a case called First National Leasing, which is cited in our brief, which says that did you cite, did the department cite 150.1320 in the trial court? My understanding was that it did not, Your Honor. It didn't? But I'm not sure that the failure to cite the regulation changes the law at all. I understand that, but can you argue it at the appellate court if you hadn't cited it below? Well, we argued the same thing below, which is that they needed books and records. All that 1320 does is say that we're right, and I'm sure we cite it to books and records cases at least. And as I said, our brief reference is First National Leasing, which is an appellate court decision that says I'm sorry, you said you believe you did or you know you did? I was not there, so I don't know. Did you read the record? I did read the record, Your Honor. Did you cite it? I do not recall if we cited it or not. In any event, you're arguing it's not in wait because you argued books and records were necessary. Yes, this whole case is about books and records. But 150.1320 is the sales tax act, isn't it? I wrote that, Your Honor. In Illinois, the sales tax is really two different taxes. One is called use tax. One is called retailer's occupation tax. And this is manufacturing. This is an exemption in the use tax side. So, yes, it's a use tax side case because the equipment was not purchased in Illinois from an Illinois retailer. And so what happens then is that the state then tries to pursue the user of the object that was sold as opposed to the seller. And that's how the state collects all of the sales taxes as it's typically called. So this case is really about a mixed use situation, which the taxpayer admits. Mr. Jesenowski in his testimony's affidavit said he had no idea how this equipment was used specifically. His testimony was all about the fact that in the aggregate, their equipment was used as a manufacturing. Now, I should say there's contrary evidence. Again, our auditor's report, which is in the record, our auditor spent time auditing a quarter in the tax period and came to the conclusion that 45 percent of their activity is manufacturing. Now, I put that aside, but I want to make the point again that there's some weighing of evidence that has to be done here before we can make the conclusion even what they say is true, which is that almost all of their or 70, 80 percent of their activities is manufacturing. I would dispute that. I think the evidence is contrary to that. But on summary judgment, I'll take it for what they say it is. In the administrative code, section 130, 330, the process or activity must be commonly regarded as manufacturing. To be so regarded, it must be thought of as manufacturing by the general public. And I didn't really see that argument in the briefs, but just a layperson looking at this operation would think that it's demolition and salvage and reclamation work. We've lost a bunch of cases, though. I know that, like the question of rocks, et cetera. Right, right. But it's the same point. The metal that's produced is not ready to be used like a traditional product, but it's still manufacturing because it's put into a particular form so it can be sold. Yes, yes. And one of the things that our auditor noted in her report was that their website doesn't mention recovery of metal at all. They market themselves as a demolition company. Again, that's evidence of what's going on here. I think we have to concede, and I think we have conceded, that much of their process here is manufacturing. The question is, does the equipment that they're using, is it primarily used for that task? And like I said, the list of equipment is in Mr. Jesenowski's testimony, things like buckets and loaders and generators. Those things are all perfectly used or well used in knocking down the building, which is not part of the manufacturing process, or smoothing the ground, which is not part of the manufacturing process, or planting the trees and the flowers and the other things that they might put on the site afterwards. With regard to the point that you had just made, isn't the Department's treatment of Brandenburg on the whole as a manufacturer for purposes of replacement tax, investment credit, the least relevant to a determination as to the primary use of the equipment? I mean, if you're treating them on the whole as a manufacturer for that purpose, why can't they rely upon that to argue? They can rely upon that to make the point that I'm conceding, which is that they're a manufacturer in some of the aspects of what they do. And the replacement tax investment credit asks about whether they achieved 50 percent over their whole operation. And to the extent that the Department has given them that credit at other times, again, I say, you know, collateral stop doesn't apply. We can reverse course in a new tax case. But I see the point. Is it at least relevant? Yes. It tends to show that the point I conceded, which is that they are sometimes a manufacturer. What it doesn't prove, if I can just finish my thought, what it doesn't prove, though, is that the individual units of taxed equipment and use tax is assessed on a per-item basis, whether their exemption meets that 50 percent, too. There's all sorts of ways you can play with numbers to have 55 percent for one piece of equipment, 45 for another. If you average it, it's 50 percent. They could claim both of them are exempt. Anyway, I don't. I'm over my time. You want to wrap up? I do. I think that this case needs to be reversed for two reasons. The main reason is because they don't have the books and records necessary to establish the exemption. And it's an important case. But the last page of their brief is where all the action is. And page 40, I direct the Court. I disagree with everything on page 40. With regard to summary judgment, I think Judge Wheaton laid the evidence here. Our amended return is evidence. It's entitled to what it's worth. And if she doesn't want to give it credit, that's fine. But it's not summary judgment, and it's a trial. So what are you asking us to do? I'm asking the Court to reverse summary judgment and remand, but for the reason that there aren't books and records here. Well, if we reversed it and remanded it, I think my recollection, if my recollection serves me, that Brandenburg at the hearing before the Department had presented some more extensive records, some photographs, some different things that they didn't present to Judge Wheaton, and they did not present it here to the appellate court. If it reverses and remanded on the summary judgment motion, if we reverse the summary judgment and remand it for a full hearing, you're saying they don't have the records. Wouldn't they be able to provide what they provided to the Department? I think at trial they can put in anything they like. Sure. So if the Court reverses summary judgment and says, by the way, Judge Wheaton laid the evidence, she shouldn't have done that, then what we should have is a trial. A trial that they can bring in whatever they have. But only if I lose my more important point, Your Honor, which is that they need the books and records to establish their exemption, and they concede they don't have those. So the premise of their whole argument here is what I'm really fighting over, and the Department took the same position below, is that they can't make an exemption claim based upon the kind of testimony Mr. Jesenowski is offering. If the Court disagrees with me, then we should have a trial. But I don't know that you have to get to that question, because if the Court agrees with me, books and records, they concede there are none here, and then summary judgment. But we didn't ask for summary judgment, so the case still has to be remanded. Right. But we'd probably make a summary judgment motion at that point. Okay? Thank you. Thank you. You'll have an opportunity for rebuttal. Thank you, Your Honor. All right, thank you, sir. Mr. Bernstein? We'll let you talk for a bit before we all jump in. Please, the Court. I want to start with the notion that Judge Wheaton weighed the evidence. I don't believe that's what she did. In a tax case like this, unlike other civil cases, there are, as I understand it, two shifts in the burden. The first, the burden is established by the prima facie case. That is the corrected return or the notice of assessment, whatever that is in the particular case. But the taxpayer then has the opportunity, as in the Gold Farm case, to present evidence that rebutts that prima facie case. And if that evidence is credible and believable and competent, then the burden shifts back to the department. Now, what your opponent is making a big deal out of, and I think you've addressed plenty in these briefs, was this crime of the burden, to shift the burden. Is testimony enough in order to shift that burden, as they're arguing and some of the case law is saying, you need more than just testimony. Can you address that? Yeah, I will. And I believe that. I do believe testimony is enough on the portion of the exemption that relates to what the process is and how the equipment was used. And if you take a look at, for example, Vans materials, in the Vans case, what the Supreme Court was looking at was testimony about how these cement mixing trucks were used. But is that, as he stated, is that a single-use tax as opposed to what you have in your case? Your Honor, to me that is a distinction that doesn't make any sense here, and here's why. If there is a regulatory or statutory requirement for books and records, that applies whether or not it is a primary use or not a primary use, a single use or a mixed use. And in fact, we went back to the appellate court, the department did make a mixed use argument in Vans. It was contrary to the discovery record, but the department argued that, no, no, no, no. These trucks are really used for delivery. They are delivering their product. And you have to allocate between delivery and the processing. Now, the Supreme Court said there were a couple reasons why it didn't accept that argument. One was the department had answered an interrogatory and said, no, we're not arguing primary use. But the second point was that, according to the testimony, the trucks had to be on all of the time that they were transporting concrete so that they could process the ready mix. So even at the Supreme Court level, there was no written record that said we need to have the trucks running all the time that there's concrete in the back. But trucks don't knock buildings down. Correct. I understand your point. And as the Supreme Court said, each case is different. You have to look at the facts of each case. One of the problems that you have is Janet's, I pronounce his name, Jasenowski's deposition. He acknowledged that he has no idea whether a specific asset's revenue was derived from at least 50% of an exempt use. That's a problem, isn't it? I don't think that's an accurate reflection of Mr. Jasenowski's testimony. Well, that was his answer in the deposition. I don't think it was. I think if you read the testimony, and it's in the record at C589-601, what he said is we do our jobs the same way every time. So every time that we are recovering metal, we set up a process, and that process, as we described in the briefs, has been certified and analyzed so that it creates repeatable and reliable products. But what he said is when I put excavators or I put wheel loaders or I put bobcats on a job site, I know exactly what they're going to do. And if you look at his testimony, in his answers, he actually said, I can tell you that 8% of the time, as an example, my excavator is involved in demolition. He went through a list in his answers and answers to those questions and gave very specific testimony about percentages. And it isn't just based on what Mr. Jasenowski said. What he said is for me to be able to make my company successful, I need to know this. I need to know what it costs me to be at a job site. I need to know how much equipment I need. Because every time a company places equipment on a job site with operators, that's an expense. So I need to know if I'm going to recover X amount of pounds of metal, I need to know economically what I need on that site and what specifically they're going to be doing. So did he say, tell me if excavator 85, what percentage was it on job 34? Isn't that what he's saying the department needs? Your Honor, I believe that is their argument. What the argument is that we need machine-by-machine, hour-by-hour, or dollar-by-dollar records. There is nothing in the department's regulations or in the case law or in the statute that requires that. And it's not just a theoretical issue because in this case, in this circumstance, in this audit, what the department did was disregard the records requirement that the department is now arguing has to be enforced. Because what the department did is granted the credit. That credit could only be granted if the underlying machine was eligible for the exemption. And that's what counsel was referring to when he said, yes, we granted some of the credit on cutting. Now, if you take a look at Mr. Jasinowski's affidavit, there is almost no equipment that was involved only in cutting. Whether you're talking about an excavator or you're talking about a shearer. And it begins at the record on C-682 in his affidavit. And if you take a look at the machinery and the equipment that is involved in cutting, almost all of it is also involved in demolition. Almost all of it will be involved in staging. But we don't know if it's 25% of the time or 50% of the time or 75% of the time. We don't know that. No, that's the testimony I was referring to from Mr. Jasinowski. I think your point would be stronger if when Mr. Jasinowski was testifying or in his affidavit, he produced the contracts. Because, as you know, job sites vary. One job site might be heavy demolition, less manufacturing. Another job site might be very simple in terms of demolition but very lucrative in terms of recovery of steel and manufacturing process. So job sites differ. And anybody who's ever operated heavy equipment also knows you have to log your hours. The machines keep hours. And you can look at a contract and say this was about 70% demolition, 30% manufacturing. Why would it be so burdensome for Brandenburg to keep those records or at least produce those records for a hearing? Well, that is the revenue studies that Mr. Jasinowski did and all of the records that he produced. That's what he did. He went through every job in Illinois for 2007 to 2010 and did exactly the analysis you're talking about. The contracts themselves won't necessarily give you percentages. They will give you tasks. They may give you a flat price. And there were some sample contracts. Or actually you'll have photographs as well. In the trial, yes, we would have photographs. That's an issue, Mr. Bernstein. It seemed to me that when reading this, reading the record, it seemed to me that at the department, at the hearing before the department, there was much more evidence put in. Why was that not submitted to the trial court in your support of your motion for summary judgment? Your Honor, we thought we had two things. We thought we had the revenue records, which were voluminous. So the argument that we produced no records of our activities was wrong. Right, but the revenue records weren't as specific. I looked at those. They're not laying anything out specifically. It seemed to me from what I was reading that there was more specifics testified to before the department. Why wasn't that used? There were, and also in the Cook County trial. The photographs were made available. If we were going to do that, we would have tried the case because that would have required additional expert testimony. And, frankly, the decision that we made was we've tried this case once. We don't want to try it again if we don't have to. Okay. Now, if you have to try it again back at the trial court, you'll bring all those records in. Of course. We will. And, you know, we would have preferred that this issue be resolved once in an appeal from the prior suit. But, you know, again, to me, the treatment of the MPC in this case for what is cutting is critical. And, you know, because it demonstrates that even the department itself didn't believe that those time, you know, machine-by-machine time, hour-by-hour, revenue-by-revenue, you know, dollar-by-dollar records were necessary. And, again, quoting a regulation related to sales that regulation 130.810 A and B, it's got nothing to do with a use tax exemption on purchases. All it covers is exempt sales. And if that's the authority that the department needs to rely on to justify their argument, to me it's a demonstration that there is no regulatory basis to require these records. If that is true, then who decides when you've presented enough to rebut the prima facie case? I think it's the court. I think it's a trial. By what standard? Is it preponderance? Is it manifest weight? What is it? I think it is a preponderance according to the Goldfarb case. And what Goldfarb says is if there is enough credible evidence that is believable based on the records and the testimony of the taxpayer, the burden shifts back to the department, and then the department must prove its case by preponderance of the evidence. I believe that's what Goldfarb stands for. And for an analogous case on the burden shifting and the failure to submit affidavits, we cited Beelman Trucking. And that was a similar type of case on a use tax exemption. The department didn't submit any counter affidavits, and the appellate court affirmed it. The lower court did exactly what the judge in this case did. Should we consider the audit documents that were presented to the trial court, should we consider that as a counter affidavit? No. Again, I think that in this case, because of the way the burden shifts, there are two issues to me. One is that's all part of the prima facie case, and once the judge determined that that prima facie case had been rebutted, then the burden shifted back to the department, and the department didn't present anything. So I think that was all part of the prima facie case. That's first. Second, I'm not sure that the audit report itself would be admissible if presented by the department. I think that's hearsay presented by the department. It's an admission presented by Brandenburg. I don't believe that's admissible evidence at the trial court because it's their own statement. It would be their own hearsay. So they would need an affidavit or something from their auditor to counter what Brandenburg presented. You talk about the testimony being sufficient based on supported by ISO and ISRI documentation, but there really was no actual documentation. Just Jessee Wilson's testimony. Again, we could have the audits themselves aren't going to demonstrate how much a particular piece of equipment or particular type of equipment is used, either individually or in the aggregate, and that was evidence that we presented on whether or not Brandenburg actually engages in manufacturing. And, again, there isn't any, at least from what I can tell, on that aspect of the exemption, there is no rule that testimony isn't sufficient. So if you look at the manufacturing cases, everybody comes in and describes what their process is, and those individual audits and individual standards aren't probative of anything other than the fact that Brandenburg is a manufacturer. Well, they're not contesting that. Right. But they are saying that under the regulations you must produce adequate records of the use, of the primary use, and that's what the regulation calls for. Again, the only regulation that I'm aware of says there must be adequate records. It doesn't say what those records are. It doesn't say. Well, it says regarding the primary use of the equipment. It does say adequate records regarding the primary use, and we know that primary use is 50% or more. Right. And so in our case, we presented two things. Again, I go back to the treatment of the MPC in this case because none of the records that the department argues are required were ever presented, and the department granted that MPC, and that means they concluded that the underlying machinery qualified for the exemption. So I don't believe that there is a regulation that requires us to do something other than what we did, but I'll finish the answer. But there were records, and that was the revenue records. This wasn't a case where Brandenburg came in and said, you're wrong. Here's our affidavit. We said you're wrong. There was a lot of evidence presented, both documentary and otherwise, and I don't know how else you satisfy a standard of adequate records. Justice Shostak made the point that those revenue records do not break down where the revenue is from. That's all opinion from Jesenowski, or his maybe not opinion. He knows because he's ‑‑ Again, I disagree with that characterization as well. There were two types of invoices, and again, the department here took Mr. Jesenowski's deposition and never asked about any of those records. I don't know whether that was a conscious choice or not, but they never asked. There are summaries within the records. One summary is of invoices. That is for metal. One summary lists projects. That is for revenue unrelated to the sales of metal. Those are in the record. I can give you record sites if the court would like. But the records were there. They were divided. They were readable. But nobody ever asked, even though the department at the lower court said we want to take discovery before we respond to the motion. And the lower court allowed the department to do that. But nobody ever asked Mr. Jesenowski the question. Do you care to wrap up? I think I've answered. Any further questions? Thank you. Mr. Alex, since we didn't talk at the time when you were up at the podium previously, we didn't really talk much about the testimony, and there required to be more than just the mere testimony of Jesenowski. How do you distinguish the ShredPax case that allowed the issue was intent in that case and what the intent was to use it for? How do you distinguish that case to this case? That was a pollution control device case, Your Honor. The statute in that case says that the intent of the taxpayer is one of the things that can establish the exemption. Use tax is nothing like that at all. Use tax has to look to use of the product that's been sold. And it's the department's case that the equipment that is listed in Mr. Jesenowski's affidavit, for example, there's no evidence as to what that equipment did. They talk about the revenue studies, and I may be wrong about this, but my understanding is that the revenue studies were done about other job sites, even in other states, Tennessee and Michigan, for example. We just don't have any evidence here as to what the equipment that Mr. Jesenowski lists in his affidavit, how it was put to use. And because that equipment can be used for demolition services as well as manufacturing services, our auditor reasonably concluded that she needed more than just the principal's testimony that he was sure that it was used mostly for manufacturing. If that kind of evidence can be used to establish this type of exemption, then, you know, all hell breaks loose. It's going to be awful. I mean, I don't mean to overstate it, but it really does mean that the department will be left unable to rebut, because how can we rebut the testimony of the principals that they're using the equipment in an exempt manner? All we can do is say- You could send investigators out, film job sites. I mean, that would be burdensome on the taxpayers as well. Yeah, that would be an awful thing if the department had to sneak around taking pictures of job sites. I'm sure they don't do that at all. Not in a case where there's just a- I mean, this is a civil case. There's no allegation here that the taxpayers have done anything criminal. If it were a criminal case, everything would be different. And our argument is simply that they've asked for an exemption. They believe in good faith they're entitled to it. It's just that they're not entitled to it because they don't have the evidence necessary to establish it. Prior to this audit, was this company getting exemptions for the use tax? I think there's no doubt about that given the Cook County case. I mean, I don't know if they've been getting them in prior tax years where they weren't audited, but we have a prior tax year where they were audited. They went to trial and they beat us. I think they beat us in Judge Sherlock's courtroom using evidence that was not appropriate. And I know that they beat me up in the briefs about not appealing that case, but honestly, there's not enough of us to appeal every case. This case is the same facts but better because it's a summary judgment case. This is the case we're appealing. We have to let Judge Sherlock's case go, of course, but this is the cleaner case because Judge Wheaton here said certain propositions of law that I can argue or have argued are just wrong and should be reversed. I'm sorry for being flat-footed on the Supreme Court's, I think it's the Goldfarb case, about the burden. You asked about what the burden is in the presumption. I don't recall what the facts of that case were. In one case, it's an old Supreme Court case. I'd urge the Court to go back and look, and if I'm wrong about the burden shifting, I'm wrong. I don't think the Department would be unhappy about that, by the way, because I think that's a technical side point. But on the technical side point, I bring it to the Court's attention. On page 23 in Judge Wheaton's order, she says, The Court finds that Brandenburg presented credible and persuasive evidence that its machinery and equipment subject to the audits were used in manufacturing process in excess of 50% of the time. She's weighing evidence there. So if I'm right about the burden shifting here, this is inappropriate for summary judgment. Doesn't she have to make that determination in these three steps? Doesn't she have to at some point say, no, there is, the taxpayer has met its burden by presenting evidence to rebut your crime efficient case. Otherwise, why are we here? I think that's wrong, Judge, as far as summary judgment goes. In summary judgment, if there's a material question of disputed fact, they can't have summary judgment. Okay. And that's, and like I said, if the Goldfarb case from 1953 says different. See, disputed fact. The taxpayer presented its position. You did not present a countervailing affidavit. But we did present not the auditors report. You did present an amended tax return, which denies that exemption. Right, that gets you your, I mean, you're arguing both sides of the thing. Either we're going for, you present a crime efficient case, they rebut, and then the burden shifts back to you. Or we're saying this is a pure summary judgment, here's affidavit, here's affidavit. The burden shifts, I would say, the burden shifts back to us at trial, not at summary judgment. So it now can shift to you at summary judgment? Not at summary judgment. So then you should never be able to file a motion for summary judgment either. Well, if there's, if the whole case turns on a point of law that is undisputed, then there's no dispute of material fact. Can you actually tell me that this could ever be undisputed then? Well, we do have disputes about the mixed use, and that's a dispute that we have. Well, that's the whole case. That can be the whole case, and it should be. What was the primary use of the questioned equipment or equipment at issue during those tax years? And without adequate records to support Jasonowski's affidavit and testimony, there should not have been a grant of summary judgment because there's a material issue of fact as to the actual use. I think my argument is that we should have probably filed a cross motion for summary judgment, and then everything would all be teed up. We didn't do that. So it has to be remanded back to Judge Wheaton if they're correct about their law. But they're not correct. Would you also agree that it's up to the trial court to determine whether you presented a prima facie case, whether it's been rebutted, and then whether you meet your burden? No. In this kind of case where books and records are an essential requirement of the law. Right, but whether or not something has been presented to establish that, is that the trial judge's call? And if not, who makes that decision? If they've presented relevant evidence, then the judge should say, as a matter of law, there is a dispute here. But our position is that the evidence they've presented is not even evidence because it's not admissible here because it's not relevant to establishing the books and records for the individual pieces of equipment. We do have a dispute. It's not relevant? It's not even relevant, Your Honor. I would take that position, yes. Because in a mixed use case where they can see that the equipment has got dual uses, and they have to establish that it's more than 50%, and the law in Illinois is well established, they need books and records to do it. If they don't have books and records. You keep saying books and records. My question is, who decides if what has been presented is books and records, and then is it sufficient? Isn't that the trial judge's call? I would say that at the administrative agency, with the expertise on what books and records is, the initial decision is the agency's to make. Now, this is a case that came directly to the circuit court. The trial judge should make that call, I suppose. Whether it is or isn't books and records, yes. But there should be no dispute here. This looks like a classic case of not books and records, is the point. And when you go on the bench, you can pronounce it. Thank you very much, Your Honor. Thank you. Thank you, gentlemen, for your arguments today and for your time. We will take this case under consideration and render a decision in due course. Right now, the court will be in brief recess before our next case. Thank you.